# IN THE COURT OF APPEALS OF IOWA

No. 21-0324
Filed June 16, 2021

**IN THE INTEREST OF Z.K.,**
**Minor Child,**

**Z.K., Father,**
 Appellant,

**J.K., Mother,**
 Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Mary Jane Sokolovske, Judge.

The mother and father separately appeal the termination of their parental rights to their child.  **AFFIRMED ON BOTH APPEALS.**

Dean A. Fankhauser of Vriezslaar, Tigges, Edington, Bottaro, Boden & Lessman, L.L.P., Sioux City, for appellant father.

Teresa Ann O'Brien, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Michelle M. Hynes of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J. and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

The mother and the father separately appeal the termination of their parental rights to Z.K., born in November 2016. The juvenile court adjudicated Z.K. a child in need of assistance (CINA) on February 2, 2020. A termination hearing was held November 18 and December 3. The court issued the termination order on February 25, 2021.

"We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## I.     Indian Child Welfare Act

The juvenile court determined the Indian Child Welfare Act (ICWA) does not apply to this proceeding because the record does not show the child is an Indian child under ICWA. *See generally* 25 U.S.C. § 1902 ("[I]t is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . ."); Iowa Code § 232B.2 (2020) ("It is the policy of the state to cooperate fully with Indian tribes and tribal citizens in Iowa in order to ensure that the intent and provisions of the federal Indian Child Welfare Act are enforced."). Both parents appeal this determination.

"ICWA applies to child custody proceedings involving an Indian child." *In re N.N.E.*, 752 N.W.2d 1, 7 (Iowa 2008). ICWA provides minimum standards for the removal and placement of Indian children. *Id.* An "Indian child" is a child "that an Indian tribe identifies as a child of the tribe's community." Iowa Code § 232B.3(6). "[I]t is better to err on the side of . . . examining thoroughly whether the child is an Indian child." *In re R.E.K.F.*, 698 N.W.2d 147, 149 (Iowa 2005).

The federal regulations provide guidance to the states in applying ICWA:

> (a) State courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record. State courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.
> (b) If there is reason to know the child is an Indian child, but the court does not have sufficient evidence to determine that the child is or is not an "Indian child," the court must:
> (1) Confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership); and
> (2) Treat the child as an Indian child, unless and until it is determined on the record that the child does not meet the definition of an "Indian child" in this part.

25 C.F.R. § 23.107 (2020).

There is no dispute that no tribe claimed the child or the parents as members of its community at the time of the termination hearing. Consistent with the court's duty to identify ICWA issues "at the commencement of the proceeding," the State filed a motion to determine the applicability of ICWA at the same time it filed a motion for CINA adjudication, and notices were mailed to the relevant

authorities.  *See id.* § 23.107(a).  An October 2, 2019 letter from the Standing Rock Sioux Tribe and an October 21, 2019 letter from the Oglala Sioux Tribe both state the child is not a member of the respective tribe and is not eligible for enrollment. These letters confirmed the child is not an "Indian child."  *See id.* § 23.107(b)(1). Nevertheless, the ICWA director for the Oglala Sioux Tribe testified at the termination hearing, stating he believed the child was eligible for enrollment with the Tribe based on the mother's ancestry and the Tribe intended to intervene in the proceeding.  However, the ICWA director acknowledged he does not have authority to determine enrollment in the Tribe, and the Tribe did not file a motion to intervene before the termination hearing.[1]  Furthermore, the ICWA director was inconsistent as to whether the child was even eligible for enrollment in the Tribe, at one time acknowledging the child's ancestry may instead be with the Standing Rock Sioux Tribe, which he does not represent.  The ICWA director's testimony on the eve of termination is simply not enough to overcome the specific written statements from the tribes already in the record.  We agree with the district court that the record available at the time of the termination hearing does not establish the child is an "Indian child."  *See* Iowa Code § 232B.3(6).  Therefore, ICWA does not apply to this proceeding.

Before we leave this issue, we note our decision does not preclude a tribe from intervening in the child's future placement.  As the juvenile court stated during

---

[1] The transcript shows the mother attempted to introduce as an exhibit a motion to intervene from the Tribe that identified another woman as the mother.  The juvenile court did not admit the document.  To the extent the parents argue the court should have admitted the Tribe as an intervenor based on this document, we agree the Tribe was not an intervenor.  *See* Iowa R. Civ. P. 1.407 (setting the substantive and procedural requirements for intervention).

the termination hearing, additional evidence the child is an Indian child "could come as late as an adoption hearing." If appropriate, future tribal intervention is consistent with ICWA's stated purpose of placing a child in an environment "that reflects the unique values of the child's tribal culture and is best able to assist the child in establishing, developing, and maintaining a political, cultural, and social relationship with the child's tribe and tribal community." *Id.* 232B.2. Our decision only finds that, based on the record available at the time of the termination hearing, the record does not establish the child is an "Indian child."

## II. The Parents' Progress

Both parents argue the juvenile court erred in terminating their parental rights "despite the progress [they] made during the pendency of the case."[2] The State asserts that simply raising "progress" does not present an issue for our consideration on appeal.

Generally, "[t]ermination of parental rights under chapter 232 follows a three-step analysis": the statutory grounds for termination, the best interests of the child, and permissive statutory factors. *In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010) (citing Iowa Code § 232.116; *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). "A broad, all encompassing argument is insufficient to identify error in cases of de novo review." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). We simply cannot identify a reviewable issue in the parents' references to their "progress," and we will not craft an argument on their behalf. *Hyler v. Garner*, 548 N.W.2d 864, 876

---

[2] The father raises the parents' progress on behalf of himself and the mother. The father may not raise arguments on behalf of the mother. *In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005). Therefore, we do not consider the father's arguments about the mother's progress.

(Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments.").

Reading the parties' arguments broadly, the parties at most question whether the State proved the child would suffer "adjudicatory harm" if placed in their care. This reference may invoke one element of at least one of the statutory grounds for termination. *See* Iowa Code § 232.116(1)(f)(4) (allowing the juvenile court to terminate parental rights if it finds "the child cannot be returned to the custody of the child's parents as provided in section 232.102," among other required findings). However, the juvenile court terminated both parents' parental rights under Iowa Code section 232.116(1)(b), (f), (g), and (*l*). Not all of these grounds require the State to prove the child would suffer adjudicatory harm in the parents' care. In particular, section 232.116(1)(b) only requires the juvenile court to find "clear and convincing evidence that the child has been abandoned or deserted" in order to terminate parental rights. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Therefore, even if we were to read the parents' references to their "progress" as a partial challenge to the statutory grounds for termination, we would reject the parents' challenge because they waived any argument on at least one ground for termination. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

Furthermore, we are not convinced the parents have made meaningful progress. Both parents have long-standing issues with substance abuse. The mother has previously had her parental rights terminated—voluntarily or involuntarily—to seven other children due at least in part to substance abuse. The mother now claims she has been sober since before removal and she is regularly attending treatment and therapy for her substance-abuse and mental-health issues. However, the mother provided no documentation or other evidence to support her self-serving claims of sobriety, and she failed to regularly meet with the Iowa Department of Human Services (DHS) so they could observe her recovery efforts. The father has failed to complete a substance-abuse evaluation, and he acknowledges he relapsed on October 24, weeks before the termination hearing.

Because both parents failed to present a reviewable issue arising from their claims of progress, we find any argument on this issue waived.

## III.  Efforts Toward Reunification

Both parents argue the DHS failed to make the required efforts toward reunification. Specifically, the parents argue the heightened requirements of ICWA apply before the State may terminate parental rights. *See* Iowa Code § 232B.5(19) (requiring the State to show "active efforts" toward reunification before terminating parental rights to an Indian child). However, as explained above, the record does not show the child is an "Indian child," and thus ICWA does not apply to this proceeding.

The State is still required to provide "reasonable efforts" toward reunification. *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("The State must

make reasonable efforts to provide services to a parent before termination proceedings may be instituted."). To the extent the parents challenge whether the State made reasonable efforts, a parent must request additional or alternative services "in an appropriate proceeding or at the appropriate time. In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *Id.* at 148. "[V]oicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge." *Id.* While the parents testified they requested additional services from the service providers, they failed to make their request to the juvenile court prior to the termination proceeding. Therefore, they have waived any argument on reasonable efforts. *See id.* Additionally, we note the DHS provided multiple services to the parents in both this proceeding and the mother's prior termination proceedings, including substance-abuse and mental-health treatment and counseling, and the parents failed to stay in regular contact with the DHS for this proceeding to take full advantage of the offered services.

## IV. Conclusion

We find the record at the time of the termination hearing does not show ICWA applies to this proceeding. Furthermore, the parents failed to present a reviewable issue arising from their claims of progress, and the parents waived any claim for additional or alternative services. Therefore, we affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**

Vaitheswaran, P.J., concurs, Tabor, J., dissents.

**TABOR, Judge** (dissenting).

For child-welfare cases, our legislature has adopted a policy of cooperation with tribes to ensure that an Indian child, whenever possible, lives in a home that "reflects the unique values of the child's tribal culture." Iowa Code § 232B.2 (2020) (clarifying state policy and procedures for implementing federal Indian Child Welfare Act (ICWA)).[3] The legislative goal is to assist the child "in establishing, developing, and maintaining a political, cultural, and social relationship with the child's tribe and tribal community." *Id.* The first step in implementing that policy is deciding whether the involved child is a tribal member or eligible for membership. *Id.* § 232B.4; *In re R.E.K.F.*, 698 N.W.2d 147, 151 (Iowa 2005) ("The provisions of the Iowa ICWA do not apply until the court determines the children are 'Indian' as defined in the Iowa ICWA."). The majority decided Z.K. was not an Indian child. I respectfully disagree.

"Indian child" means an unmarried person under age eighteen who is either (a) a member of an Indian tribe or (b) is eligible for membership and is the biological child of a member of an Indian tribe. 25 U.S.C. § 1903(4); *see In re N.N.E.*, 752 N.W.2d 1, 7 (Iowa 2008) (recalling that *In re A.W.*, 741 N.W.2d 793, 810 (Iowa 2007), held including "ethnic Indians" who were ineligible for tribal membership was an unconstitutional aspect of the definition of Indian child in section 232B.3(6)).

---

[3] The federal legislation emerged from rising concern over "the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32 (1989).

How is a child's Indian status determined?  ICWA grants a tribe "conclusive" authority to identify its members and those eligible for membership:

> A written determination by an Indian tribe that a child is a member of or eligible for membership in that tribe, or testimony attesting to such status by a person authorized by the tribe to provide that determination, shall be conclusive.  A written determination by an Indian tribe, or testimony by a person authorized by the tribe to provide that determination or testimony, that a child is not a member of or eligible for membership in that tribe shall be conclusive as to that tribe.  *If an Indian tribe does not provide evidence of the child's status as an Indian child, the court shall determine the child's status.*

Iowa Code § 232B.4(3) (emphasis added); *accord R.E.K.F.*, 698 N.W.2d at 149 ("Whether or not a child is an Indian child is, after all, a question for the tribe to answer in the first instance. . . .  Only if the Indian tribe does not provide evidence of the child's status as an Indian child may the juvenile court determine the matter itself.").  We strictly apply the provisions of this law to protect Indian families.  *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).  To that end, if there is doubt about whether a child is an Indian child, "it is better to err on the side of giving notice to the tribe and examining thoroughly whether the child is an Indian child." *R.E.K.F.*, 698 N.W.2d at 149.

Admittedly, this case features mixed messages from the Oglala Sioux Tribe on Z.K.'s eligibility for membership.  In October 2019, Jason Little, then ICWA director for the Oglala Sioux Tribe at the Pine Ridge Reservation in South Dakota, sent notice to the Woodbury County Attorney's office that Z.K. was not a member or eligible to be enrolled as a member of the tribe.  But at the termination hearing in November 2020, David Michael Red Cloud, the new ICWA director for the Oglala Sioux, testified that Z.K. *was* eligible for enrollment in his tribe.  Red Cloud explained that the tribe removed its former ICWA staff from office in August.  Red

Cloud testified his predecessor, Little, "never did his due diligence" and "[t]hat's the reason why he got fired." Without a challenge to Red Cloud's authority to speak for the tribe at the termination hearing, his testimony that Z.K. is eligible for membership should have been conclusive under Iowa Code section 232B.4(3).

But the State did not accept Red Cloud's attestation that Z.K. is an Indian child.[4] Instead, the assistant county attorney cross-examined Red Cloud about Z.K.'s mother being enrolled in the Standing Rock Sioux Tribe, suggesting that her status in a different tribe barred Z.K.'s enrollment as an Oglala Sioux. Red Cloud gave no ground: "the mother is a full-blood Indian. There's no way you can determine that the kid is not an Indian. She's at least a half Native American regardless if it's Standing Rock, regardless if it's Oglala Sioux Tribe. We need the time to figure this out." On the time issue, Red Cloud explained that the COVID-19 pandemic had stalled work at the Bureau of Indian Affairs (BIA). He testified: "They haven't done any enrollments since March of 2020." Red Cloud later clarified that short of certification by the BIA, the tribe can determine "in-house" whether someone is eligible for membership. On that prerogative of the tribe to determine its membership, Red Cloud testified: "[O]ur kids have suffered injustice for a long time through the court system and been fostered out. So we intervene on behalf of all cases in regards to anyone eligible to be Oglala Sioux tribal members."

---

[4] For reasons that are unclear from the record, the State advocated strongly throughout this child-welfare case that ICWA should not apply despite evidence that Z.K.'s maternal relatives are tribal members. In March 2020, the assistant county attorney filed a nine-page trial brief in support of the State's request to find that ICWA did not apply to the termination proceedings.

Still, after hearing Red Cloud's testimony, the juvenile court denied the tribe's motion to intervene. The court professed that it did not have "sufficient information or evidence" to support the motion. In its termination order, the juvenile court found "ICWA remains not applicable to this child."

The juvenile court was wrong on both findings. Under section 232B.4(3), the court did not need to "determine the child's status" because "a person authorized by the tribe to provide that determination" did so. After hearing Red Cloud's testimony, the court had "conclusive" proof that Z.K. was eligible for membership in the Oglala Sioux tribe and his mother was a tribal citizen. *See* Iowa Code § 232B.4(3). What about the earlier letter indicating Z.K. is not an Indian child? Even if the letter from the Oglala's former ICWA director muddied the waters, the court had—at a minimum—"reason to know" that Z.K. was an Indian child. *See* 25 C.F.R. § 23.107(c) (2020) (explaining a state court has reason to know a child involved in a custody proceeding is an Indian child if it receives that information from an Indian Tribe). Under those federal regulations, the court cannot ignore the distinct possibility that ICWA applies to the termination proceedings but must "[t]reat the child as an Indian child, unless and until it is determined on the record that the child does not meet the definition." *Id.* § 23.107(b)(2). Here is the relevant directive to state courts:

> If there is reason to know the child is an Indian child, but the court does not have sufficient evidence to determine that the child is or is not an "Indian child," the court must:
> (1) Confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a

biological parent is a member and the child is eligible for membership) . . .

25 C.F.R. § 23.107(b)(1).

Contrary to that directive, the juvenile court forged ahead without confirming Z.K.'s status and instead treated him as if he were not an Indian child.  In doing so, the court applied the wrong standard for terminating parental rights.  *See* Iowa Code § 232B.5(19) (requiring proof of "active efforts" to provide remedial services to Indian child in termination case).  I would reverse the termination order and remand for further proceedings consistent with Z.K. status as an Indian child.